UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL PEREZ,

                          Plaintiff,

        -v-

ROSSY'S BAKERY & COFFEE SHOP, INC., d/b/a
ROSSY'S BAKERY, and ROSELIA CABA,

                          Defendants.

CIVIL ACTION NO.: 19 Civ. 8683 (SLC)

**MEMORANDUM & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.  INTRODUCTION

Plaintiff Rafael Perez  ("Perez") brought this action against his former employer, Rossy's

Bakery & Coffee Shop, Inc., d/b/a Rossy's Bakery ("Rossy's") and its owner, Roselia Caba ("Caba")

(Rossy's and Caba together, "Defendants"), for violations of the Fair Labor Standards Act, 29

U.S.C. § 201 et seq. ("FLSA") and New York Labor Law §§ 190 et seq. ("NYLL").  Perez alleges that

he worked at Rossy's for approximately ten months in 2017, but Defendants failed to pay him

legally-required overtime wages for that period and failed to provide him with wage notices and

wage statements required under the New York Wage Theft Prevention Act ("WTPA").  (ECF

No. 1).

The parties consented to Magistrate Judge jurisdiction for all purposes (ECF No. 22), and

on September 9, 2020, the Court held a one-day bench trial.  (ECF minute entry Sept. 9, 2020).

After carefully considering the evidence presented at trial, the demeanor of the witnesses, the

arguments of counsel, the written submissions, and the controlling law on the issues presented,

the Court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil

Procedure 52(a).  To the extent any finding of fact includes conclusions of law, it is deemed a conclusion of law, and vice versa.

For the following reasons, the Court finds that Perez failed to meet his burden of proof with respect to his claimed overtime damages, but does award Perez damages for the WTPA violations in the amount of $1,500.00, attorneys' fees in the amount of $15,138.75, and costs in the amount of $1,685.14.

## II.  <u>BURDEN OF PROOF</u>

A plaintiff bears the burden of proving the number of hours that he worked.  <u>See</u> <u>Kim v. Kum Gang, Inc.</u>, No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015). Under the FLSA and the NYLL, however, an employer is required to maintain records of wages and hours, and if he fails to do so, a plaintiff "will not be penalized due to [his] employer's record-keeping default." <u>Reich v. S. New England Telecomm. Corp.</u>, 121 F.3d 58, 69 (2d Cir. 1997) (citing <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), superseded by statute on other grounds as explained in, <u>Integrity Staffing Solutions, Inc. v. Busk</u>, 574 U.S. 27, 31 (2014)).  Where the employer has not maintained records of wages and hours, the plaintiff "need only prove that [he] performed work for which [he was] not properly compensated and produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" <u>Reich</u>, 121 F.3d at 69 (quoting <u>Anderson</u>, 328 U.S. at 687).

To meet this burden of proof, the plaintiff may testify as to his own recollection in the absence of records kept by his employer.  <u>See</u>, <u>e.g.</u>, <u>Anderson</u>, 328 U.S. at 687–88 (holding that, where employer's records are inadequate, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."); Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection."); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 331 (S.D.N.Y. 2005) (explaining that, in the absence of employer records, employee may carry his burden by submitting "'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" (quoting Reich 121 F.3d at 66)). Following the plaintiff's testimony, which presumptively establishes the fact of a violation and injury, the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." Id. at 335 (quoting Anderson, 328 U.S. at 687–88). If the employer fails to meet this burden, the Court may award damages to the employee, "even though the result is only approximate." Reich, 121 F.3d at 69.

"Although a plaintiff's testimony regarding his recollection alone may be sufficient to establish a rebuttable presumption that he worked certain hours for which he was not compensated, such testimony only establishes a presumption if the testimony is credible." Romero v. Rung Charoen Sub, Inc., No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *4 (E.D.N.Y. Sept. 30, 2017) (citing Daniels v. 1710 Realty LLC, 497 F. App'x 137 (2d Cir. 2012)). It is the role of the trial court in making a finding of fact to determine "how much weight to afford any given witness's testimony, and whether or not witnesses are credible." Romero, 2017 WL 4480758, at *4; see Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (explaining that, in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony

should be credited"); <u>Newman v. Herbst</u>, No. 09 Civ. 4313 (TLM), 2011 WL 684165, at *1 (E.D.N.Y. Feb. 15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements."). This burden-shifting framework applies under both the FLSA and the NYLL. <u>See</u> <u>Romero</u>, 2017 WL 4480758, at *4; <u>Canelas v. World Pizza, Inc.</u>, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017).

### III. BACKGROUND

#### A. The Parties

##### 1. Defendants

Caba owns and maintains control, oversight, and direction over Rossy's, a bakery located on the Lower East Side of Manhattan. (ECF Nos. 38 ¶ 7, 42 ¶ 2). Caba exercises sufficient control over Rossy's such that she may be considered Perez's employer. (ECF No. 42 ¶ 3). Defendants had, and exercised, substantial control over Perez's working conditions, schedule, and wages. (<u>Id.</u> ¶ 6).

Caba opened Rossy's, which serves traditional Dominican food and cakes, about ten years ago and is the sole owner. (ECF No. 53 (Trial Transcript ("Tr.") at 6–7). Rossy's is open seven days a week, from 8 a.m. to 8 p.m. (Tr. at 7–8). Rossy's space is about 1,000 square feet, with a counter and a small area in which customers can sit. (Tr. at 8). Caba's mother, Norma Ortiz ("Ortiz"), stepfather, Juanito Escalante ("Juanito"), brother, Gabriel Escalante ("Gabriel"), and son (whose name was not provided), have each helped Caba staff the bakery, mostly without pay. (Tr. 10–14, 31). Caba has paid her brother, Gabriel, a weekly salary for his work as a cashier

and stockperson.  (Tr. at 14).  Rossy's currently has a staff of six employees, three of whom are on the payroll (two bakers — Rasquel Vasquez ("Vasquez") and Camilia Pena ("Pena") and a cashier), and Caba's three family members, who are unpaid.  (Tr. at 25–26, 32).  During several months in 2017 and 2018, Genesis Collado worked at Rossy's as a cashier.  (ECF No. 44-1 (Def. Ex. 1); Tr. at 1–17).  Caba hired Collado, who had been incarcerated and was seeking work as part of her probation program.  (Tr. at 16, 70–71).  Caba supplied to Collado's probation officer a letter that set out her work schedule at Rossy's.  (Id. at 71).

Rossy's kept track of its sales using a point-of-sale computer system.  (Tr. at 23–24).  Caba testified that Rossy's averaged about $1,800 in sales each day.  (Id. at 24, 70).  Defendants also maintained payroll records, using an outside payroll company, for each week in 2017 (the "Payroll Records").  (Id. at 33, 35; ECF No. 44-1 (Def. Ex. 1)).  The Payroll Records show entries for Caba, Gabriel, Ortiz, Vasquez, Pena, and Collado; there are no entries for Perez.  (ECF No. 44-1 (Def. Ex. 1); Tr. at 35).  The Payroll Records reflect the total amount paid to each employee, but do not specify the hours each employee worked during any given week.  (Id.)  Defendants also submitted the tax returns for Rossy's for 2017, which reflect gross sales of $312,532, gross profit of $221,310, and a net loss of $981.00.  (ECF No. 44-2 at 1 (Def. Ex. 2 at 1)).

In 2018, the New York State Department of Labor ("DOL") investigated Rossy's to determine its compliance with the NYLL for the period from July 3, 2015 to July 3, 2018 (the "DOL Investigation").  (Tr. at 14–15; ECF No. 48-1 (Pl. Ex. B) at 7–10).  As part of the DOL Investigation, Caba furnished the DOL with a bank statement, the Payroll Records, and other documents, and DOL interviewed Collado.  (ECF No. 48-1 (Pl. Ex. B) at 1; Tr. at 16).  In a letter dated November 12,

2019 (the "DOL Letter"), the DOL noted that the Payroll Records did not list the hours employees

worked, and listed several provisions of the NYLL that Rossy's had violated:

> Section 661: failure to maintain a complete, true and accurate records [sic] for each employee showing daily and weekly hours worked, gross wages, deductions, allowance and net wages.
> Part 146-2.2: failure to furnish to each employee, prior the start of employment, written notice of the employee's regular hourly rate of pay, overtime hourly rate of pay, the amount of tip credit, if taken and the regular payday.
> Part 146-2.3: for failure to provide to each employee a wage statement with every payment of wages.
> Part 146-2.5: for failure to pay by hourly rates of pay.
> Section 162: failure to allow prescribed meal periods.

(ECF No. 48-1 (Pl. Ex. B) at 7–8).  The DOL found, however, that Collado was the only employee

whom Rossy's had underpaid the applicable minimum wage, in the amount of $397.60; the DOL

Letter does not mention Perez.  (Id. at 7–9; Tr. at 34).  The DOL thus ordered Rossy's to pay a fine

in the amount of $2,097.00, consisting of the $397.60 by which Collado was underpaid, $99.40

in liquidated damages, and $1,600.00 in penalties.  (ECF No. 48-1 (Pl. Ex. B) at 9).  Caba paid the

fine.  (Tr. at 18).

## 2. Testimony Concerning Perez's Employment

It is undisputed that Perez's job duties at Rossy's were dishwashing and bringing deliveries

of supplies from the front door into the basement.  (Tr. at 28, 41, 47).  The parties dispute the

length of time and the hours during which Perez worked at Rossy's.  The only two witnesses who

testified at trial were Perez and Caba.

Perez testified that he worked at Rossy's "for a total of ten months in 1917."  (Tr. at 45).[1]

He recalled interviewing with Caba, who told him that he was to work from 11 a.m. to 9:30 p.m.,

---

[1] The Court presumes Perez meant 2017; he also testified that the current year was "1920," which the Court infers meant 2020.  (Tr. 46).

with a half-hour break, for which he would be paid $450 or $475 in cash.  (Id. at 46).  Perez testified that after six months, Caba paid him $500 for the remainder of the ten months.  (Id. at 46, 55).  During the ten months he worked at Rossy's, he testified that he worked 63 hours per week, six days per week, and this schedule "never varied."  (Id. at 47).  In his damages submission to the Court, however, he reports working 60 hours per week.  (ECF No. 48-1 (Pl. Ex. B) at 82–84).  He asserted that Caba never asked him for any documentation such as a tax identification or Social Security number.  (Tr. at 47).  Perez's employment at Rossy's ended when he "finally made a demand that [Caba] pay [him] a fair salary," that is, "an hourly wage according to the law."  (Id. at 48).  Perez testified that, in response, Caba told him, "I'll let you know if that happens," but "she never called [him] back."  (Id. at 55).  When asked whether he filed a tax return for 2017, Perez testified that in January 2019, he "called the IRS, and they told [him] to prepare the paperwork and have [Caba] sign it, indicating that [he] worked [at Rossy's.]"  (Id. at 60).

Caba testified that Perez called her several times looking for work, and she had once agreed to allow him to come in to Rossy's, but he did not show up.  (Tr. 20).  After that, Perez called Caba again looking for work, and when she agreed that he could come in, he did so.  (Id.)  Caba agreed to "try [him] out," and he worked for five days for which Caba agreed to pay him "around" $450.  (Id. at 20–21).  Perez did not "clock in" or "clock out," but Caba recalled him working from 11 a.m. to 7 p.m.  (Id.; ECF No. 42 ¶ 5).  She asserted that Perez did not work past 7:00 p.m. or any other overtime, because Rossy's closed at 8:00 p.m. and she relied on family members to clean and close the store.  (ECF No. 42 ¶ 5; Tr. at 10–14, 38).  Caba testified that, on Perez's last day, a Saturday, she paid him $450 or $475 in cash, and told him to come in on Monday with "paperwork," including his Social Security card, his identification, or a residence

card.  (Tr. at 21).   Perez did not come in the following Monday with the paperwork Caba requested; instead, he called to tell her that "he wasn't able to provide the paperwork but that he would work and [she would] have to pay him the minimum in cash."  (Id. at 38).  Caba "told him, no, that he needed to go on payroll," and that she only paid him "the one time so he could have the cash."  (Id.)  Caba testified that Perez insisted "it needs to be cash."  (Id.)  Caba "just wanted to get off the phone," so she said she would "think about it."  (Id.)  Caba did not hear from Perez again until the next year, and did not reach out to contact him herself.  (Id.)  Caba testified that she did not have any of her employees work any overtime in 2017 because she could not "afford it."  (Id. at 73).

## IV.  **FINDINGS OF FACT**

The Court makes the following Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1).   These Findings of Fact are drawn from witness testimony at trial, the parties' trial exhibits, and the Court's analysis of the credibility and weight to which that evidence is entitled.

### A.  **Employment**

The Court finds that Perez was an employee of Rossy's, a Dominican bakery owned and operated by Caba.  (ECF No. 42 ¶ 1–6; Tr. at 6–8).  Perez's work included dishwashing and carrying in deliveries of supplies.  (Tr. at 28, 41, 47).

### B.  **Dates of Employment**

The Court finds that Perez worked at Rossy's for five (5) days in one week in July 2017. (ECF No. 42 ¶ 4; Tr. at 20).  As the person in the position to know the most about Rossy's business, Caba was a very credible witness when she testified that Perez worked for the single week on a trial basis, and that she did not formally employ him after that due to his failure to provide her

with the paperwork necessary to put him on the payroll. (Tr. at 20). The fact that Rossy's maintained Payroll Records for 2017, and that those showed the employment of and wages paid to other employees undercuts Perez's contention that he worked at Rossy's for ten months in 2017. (Tr. at 45). Accordingly, the Court finds that Defendants presented sufficient evidence to rebut the presumption from Perez's testimony that he worked at Rossy's for ten months, and finds instead that Perez worked for one week, or five days, in July 2017. See Romero, 2017 WL 4480758, at *4 (finding that employer successfully rebutted plaintiff's testimony about dates of employment).

### C. Records

The Court finds that Defendants did not keep complete and accurate records of the hours Perez worked during his five days of employment at Rossy's. Caba paid Perez by cash, but did not provide him with any written statement or pay stub reflecting his gross pay, hourly rate, or total hours worked. (Tr. at 18–19). See Romero, 2017 WL 4480758, at *5 (finding deficiencies in pay stubs employer provided to plaintiff).

### D. Hours Worked

The parties agree that Perez began work each day at 11:00 a.m. (Tr. at 20, 46); they dispute the time at which he ended work. The Court finds that Perez's workday ended on each of the five days at 7:00 p.m. The Court reaches this conclusion for several reasons. First, Caba testified credibly that Perez's week working at Rossy's was a trial period, which she did not extend to formal employment because he did not provide the paperwork she requested to put him on the payroll. (Tr. at 20–21). Given that it was a trial period, the Court finds it unlikely that Perez would have worked hours as long as those he claims to have worked. Second, Caba regularly

enlisted her family members to help with extra work so that she did not incur overtime expenses. (Id. at 10–14; ECF No. 42 ¶ 5).  Third, although Perez testified that he worked 63 hours in a week, or 23 hours of overtime, his damages calculation asserts that he worked 60 hours, or 20 hours of overtime; these contradictions in Perez's representations to the Court render his assertion about the number of hours he worked not credible.  See Romero, 2017 WL 4480758, at *6.  Therefore, the Court finds that Perez worked from 11:00 a.m. to 7:00 p.m. on each of the five days he worked at Rossy's.

### E.  Compensation

The record includes very little evidence about Perez's compensation, which remains ambiguous even after trial.  Both Perez and Caba were unclear whether he was paid $450 or $475.  (Tr. at 20, 46, 55).  Perez also contended that his compensation increased to $500 after several months.  (Tr. at 46).  The Court notes that $475 is more than twice what any other employee, other than Caba herself, was paid in 2017, according to the Payroll Records.  (ECF No. 44-1 (Def. Ex. 1)).  Nevertheless, the Court finds that Defendants have failed to rebut the presumption established by Perez's recollection that he was paid $475 for his work at Rossy's, and finds that his weekly wage was $475.  See Romero, 2017 WL 4480758, at *8 (drawing inference about plaintiff's wages due to lack of evidence in record).

### F.  Wage Notices & Statements

Caba admitted that, before Perez started working, she did not provide him with a wage notice setting forth his hourly rate.  (Tr. 18–19).  Similarly, it is undisputed that Caba paid Perez in cash at the end of his week of work and did not provide a wage statement.  (Id. at 18, 21, 46).

Therefore, the Court finds that Defendants failed to provide Perez with the required wage notice and wage statement.

## V.  <u>CONCLUSIONS OF LAW</u>

Perez asserts that Defendants violated the FLSA and NYLL by failing to pay him statutorily-required overtime wages and failing to provide required wage notices and statements.  Perez bears the burden of proving by a preponderance of the evidence each of the elements of his claims and his entitlement to damages.  See <u>Tapia v. BLCH 3rd Ave. LLC</u>, No. 14 Civ. 8529 (AJN), 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016).

For the reasons that follow, the Court concludes that Perez has met his burden of proof on his claims against Defendants with respect the wage notice and wage statement, but failed to meet his burden to show that he is entitled to any overtime wages or other wage-related compensation.

### A.  <u>Threshold Requirements</u>

Before addressing specific questions regarding Defendants' liability, the Court addresses whether the threshold requirements for liability under the FLSA and NYLL have been met.

#### 1.  <u>Jurisdiction and venue</u>

The Court has subject matter jurisdiction over the FLSA claims under 28 U.S.C. §§ 1331 and 1337.  The Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.  Venue is proper in the Southern District of New York because Rossy's is a domestic business corporation doing business in Manhattan. (ECF Nos. 1 ¶ 16; 16 ¶ 1; 38 ¶ 3; 42 ¶ 3).

### 2.  <u>Applicable law</u>

Both the FLSA and NYLL "guarantee[] compensation for all work . . . engaged in by [covered] employees." <u>Kuebel</u>, 643 F.3d at 359.  To hold an employer liable for underpayment of wages, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." <u>Id.</u> at 361.  An employee is "covered" under FLSA only if he, in any workweek, either (i) "engaged in commerce or in the production of goods for commerce;" or (ii) was "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a); <u>see</u> <u>Marcelino v. 374 Food, Inc.</u>, No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at *9 (S.D.N.Y. Mar. 27, 2018).  Here, Perez is asserting liability under the latter, or "enterprise" coverage, such that whether the FLSA applies depends on whether Rossy's was an "enterprise engaged in commerce or in the production of goods for commerce" during the time he claims to have worked there.  29 U.S.C. §§ 206(a), 207(a)(1).  Perez bears the burden of proving this issue.  <u>See</u> <u>Marcelino</u>, 2018 WL 1517205, at *9.

An "enterprise engaged in commerce or in the production of goods for commerce" under the FLSA is an entity that (i) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (ii) "whose annual gross volume of sales made or business done is not less than $500,000[.]"  29 U.S.C. § 203(s)(1)(A)(i–ii).  <u>See</u> <u>Marcelino</u>, 2018 WL 1517205, at *10.

3. **Analysis**

At trial, Defendants did not dispute that their employees engaged in commerce, the first element above,[2] but there was a disputed issue of fact as to the second element, whether Rossy's annual gross volume of sales and business exceeded $500,000.  (ECF No. 16 ¶ 3).  In support of their defense that their business was below this threshold, Defendants introduced into evidence an unsigned copy of Rossy's federal tax return for 2017, which states that Rossy's gross receipts for the year were $312,532.  (ECF No. 44-2 at 1).  Caba, Rossy's owner, testified with conviction, however, that sales were typically $1,800 per day, amounting to more than $12,000 per week, with some seasonal fluctuations.  (Tr. at 24).  Those amounts would place the total annual gross volume of sales in the range of $624,000 ($12,000 x 52 weeks) to $657,000 ($1,800 x 365 days), above the FLSA threshold.

As several district courts in the Second Circuit have noted, "tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff."  Shen v. John Doe Corp., No. 16 Civ. 2015 (GBD) (JCF), 2016 WL 7217850, at *7 (S.D.N.Y. Dec. 13, 2016), adopted by 2017 WL 111746 (Jan. 11, 2017); see Jia Hu Qian v. Siew Foong Hui, No. 11 Civ. 5584 (CM), 2013 WL 3009389, at *3 (S.D.N.Y. June 14, 2013).  Here, Rossy's tax returns are neither signed nor accompanied by the affidavit of a tax preparer or Rossy's owner attesting to their authenticity, and, as such, are not alone sufficient to establish Rossy's gross sales as an undisputed fact.  See Jai Fu Chen v. New 9th Ave. Pearl on Sushi, Inc., No. 14 Civ. 580 (JPO), 2015 WL 3947560, at *3

---

[2] The first element is, in any event, easily met, given that "'local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce.'"  Shu Lan Chen v. Gypsophilia Nail & Spa Inc., No. 15 Civ. 2520 (JPO), 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (Sotomayor, J.)).

(S.D.N.Y. June 29, 2015) (finding that unsigned tax returns did not definitively establish defendants' sales volume); Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) (finding tax returns not reliable where they were unsigned and unverified).

As the owner of Rossy's who was present in the bakery every day (Tr. at 7–8), Caba was in the best position to attest to its daily and weekly sales volume, and the Court credits her testimony, over the unsigned, unverified tax returns, as establishing Rossy's actual sales volume. See Monterossa v. Martinez Rest. Corp., No. 11 Civ. 3689 (JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (crediting evidence that contradicted defendants' tax returns and showed defendants' annual gross income exceeded $500,000 threshold).  Accordingly, the Court finds that the evidence at trial established that Rossy's annual gross income exceeded the $500,000 FLSA threshold in 2017; therefore, Defendants are subject to the FLSA.

**B.  Liability Under the FLSA and the NYLL**

Turning to the issues of liability and damages, Perez alleges that Defendants failed to pay him proper overtime and failed to provide him with required wage notices and wage statements. (ECF No. 1 ¶¶ 1, 38, 40–42).

**1.  Rossy's and Caba were Perez's "employers"**

**a.  Applicable law**

To determine whether Defendants were Perez's "employers" for FLSA purposes, the Court examines the "economic reality" of the working relationship.  Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013).  Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

14

employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)).  This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3),[3] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017).

Where, as here, the plaintiff seeks to impose FLSA liability on an individual as well the entity that was the undisputed employer, courts consider a non-exclusive list of factors (the

---

[3] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

"Carter" factors) to determine whether the individual defendant "[i] had the power to hire and hire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." Barfield, 537 F.3d at 142 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). "Courts also consider other factors bearing upon the overarching concern of whether the alleged employer possessed the power to control the workers in question." Marcelino, 2018 WL 1517205, at *12 (internal citations omitted).

### b.  Analysis

It is undisputed that Defendants were Perez's employers. (ECF No. 42 ¶¶ 1–4, 6). "Where both an individual and a business are considered employers under the FLSA and/or NYLL, they are jointly and severally liable for any judgment resulting from a plaintiff's claims under those statutes." Romero, 2017 WL 4480758, at *9. Therefore, because both Caba and Rossy's are considered Perez's employer within the meaning of the FLSA and the NYLL, they are jointly and severally liable as to any judgment resulting from Perez's claims in this action. Id.

### 2.  Overtime wages

### a.  Applicable law

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2. To state an overtime claim, a plaintiff "must allege only that [he] worked compensable overtime in a workweek longer than forty hours, and that [he] was not properly compensated for that overtime." Tackie, 2014 WL 4626229, at *3.; see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013). "Under the FLSA, there

is a rebuttable presumption that a weekly salary covers 40 hours worked in a week." <u>Sanchez Gallego v. Adyar Ananda Bhavean Corp.</u>, No. 16 Civ. 4621 (AJN), 2019 WL 131957, at *2 (S.D.N.Y. Jan. 8, 2019).  Under the NYLL, courts calculate the regular rate for a restaurant employee who is not paid on an hourly basis by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by the employee during the work week."  12 N.Y.C.R.R. § 146-3.5.  "'[I]f an employee's regular rate is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the regular rate.'"  <u>Feng Chen v. Patel</u>, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *9 (S.D.N.Y. July 2, 2019) (quoting <u>Peralta v. M & O Iron Works, Inc.</u>, No. 12 Civ. 3179 (ARR) (RLM), 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014)).  During 2017, the minimum wage for a small employer like Rossy's under the FLSA was $7.25 and under the NYLL was $10.50.  29 U.S.C. § 206(a)(1); NYLL § 652(a)(ii).

### b.  Analysis

As set forth above, the Court made a factual finding that Perez worked only five days for Rossy's, from 11:00 a.m. to 7:00 p.m. each day, and did not work any overtime.  (See <u>supra</u> § IV(A), (D)).  Accordingly, as a matter of law, Perez is not entitled to an award of any overtime damages.

### 3.  Wage Statements and Notices

### a.  Applicable law

The WTPA, effective April 9, 2011, required Defendants to provide Perez, at the time he was hired, with a notice containing, <u>inter alia</u>, the rate and frequency of his pay, NYLL § 195(1), and to furnish him a written statement with each payment of wages, listing, <u>inter alia</u>, the dates

covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked.  NYLL § 195(3); see Mondragon, 2019 WL 2551536, at *12.  Violations of Section 195(1) result in damages of $50 per workday, for a maximum of $5,000.  NYLL § 198(1-b).  Violations of Section 195(3) result in damages of $250 per day, for a maximum of $5,000.  NYLL § 198(1-d).

### b.  Analysis

As set forth above, Defendants failed to provide Perez the required wage notice at the beginning of his employment and the required wage statement at the time he was paid.  (See supra § IV(C)).  Perez worked one week consisting of five days of work, in 2017, and is therefore entitled to $250 ($50*5) under NYLL § 198(1-b) for the NYLL § 195(1) violations, plus $1,250 ($250*5) in damages under NYLL § 198(1-d) for the NYLL § 195(3) violations, for a total of $1,500.00.

### 4.  Liquidated damages

### a.  Applicable law

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'"  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages. Barfield, 537 F.3d at 150.  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light

of their default, they have not rebutted the presumption in favor of a liquidated damages award."

Guaman v. J&C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y.

Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been

awarded wage and overtime damages pursuant to the NYLL because state law provided the

greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages

that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Global

Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting

Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug.

2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15.

Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the

employer proves a good faith basis for believing that its underpayment of wages was in

compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  Effective April 9, 2011, the liquidated

damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a),

663(1).

Under Second Circuit precedent, a plaintiff may not recover liquidated damages under

both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60

(2d Cir. 2016); Mondragon, 2019 FWL 2551536, at *11; Feng Chen, 2019 WL 2763836, at *13.  A

plaintiff should recover "under the statute that provides the greatest relief."  Almanzar v. 1342

St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov.

7, 2016) (internal citation omitted).

### b. <u>Analysis</u>

As explained above, Perez has not shown that Defendants failed to pay him overtime wages.  Accordingly, he is not entitled to an award of liquidated damages.

### 5. <u>Prejudgment interest</u>

### a. <u>Applicable law</u>

Under the FLSA, prejudgment interest is not available where liquidated damages have been awarded.  <u>See</u> <u>Mondragon</u>, 2019 WL 2551536, at *11.  Under New York law, however, Perez may recover both liquidated damages and prejudgment interest, NYLL § 198(1-a); because the former are considered punitive, while the latter "compensate[s] a plaintiff for the loss of use of money."  <u>Reilly v. Natwest Markets Grp. Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999).  "[P]rejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."  <u>Xochimitl</u>, 2016 WL 4704917, at *18 (internal citations omitted).  He may only recover prejudgment interest on his actual damages under the NYLL, not his liquidated damages.  <u>Gamero v. Koodo Sushi Corp.</u>, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).  Prejudgment interest is <u>not</u> awarded "for violations of the wage statement or wage notice provisions."  <u>Salustio v. 106 Columbia Deli Corp.</u>, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

Under New York law, the simple interest rate is 9% per annum, N.Y. C.P.L.R. § 5004, and is computed "on a simple interest basis."  <u>Marfia v. T.C. Ziraat Bankasi</u>, 147 F.3d 83, 90 (2d Cir. 1998).  For damages that "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); <u>see Marfia</u>, 147 F.3d at 91 (noting courts' discretion to calculate prejudgment interest based on the "date when damages were incurred or 'a single

reasonable intermediate date,' which can be used to simplify the calculation").  The midpoint of the plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012); Mondragon, 2019 WL 2551536, at *11.

Prejudgment interest is calculated based on a plaintiff's "NYLL unpaid minimum, overtime and spread of hours wage claims (that do not overlap with FLSA recovery)."  Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015).

### b.  Analysis

As noted above, the NYLL allows prejudgment interest only on the amount of wage-related damages a plaintiff is awarded.  Here, the Court has not awarded Perez any wage-related damages, and, therefore, he is not entitled to prejudgment interest.

### 6.  Attorneys' fees and costs

### a.  Applicable law

Both the FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a reasonable hourly rate. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth. 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

Perez requests an award of attorneys' fees and costs in the amount of $17,768.64.  (ECF

Nos. 61 at 6; 62 at 7).

i.      **Reasonable hourly rate**

To determine whether an hourly rate is reasonable, the Second Circuit has instructed

district courts to "apply the prevailing rate within the district for similar services by lawyers of

comparable experience and skill."  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d

306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court

may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions;
> [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of
> employment by the attorney due to acceptance of the case; [v] the customary fee;
> [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the
> client or the circumstances; [viii] the amount involved and the results obtained;
> [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability'
> of the case; [xi] the nature and length of the professional relationship with the
> client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v.

Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between

$300 to $400 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL

1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL

5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced

litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ.

05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead

attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

### ii. <u>Reasonable hours expended</u>

To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." <u>Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.</u>, No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), <u>adopted by</u> 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting <u>Hensley</u>, 461 U.S. at 434).

### iii. <u>Costs</u>

An employee who prevails in a wage-and-hour action is entitled to recover costs.  <u>See</u> 29 U.S.C. § 216(b); NYLL § 663(1).  Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." <u>Leblanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted).

### b. <u>Analysis</u>

### i. <u>Hourly rates</u>

Perez's counsel consisted of one attorney, Jacob Aronauer, Esq., assisted by paralegals. (ECF No. 61 at 4–7).  He requests an hourly rate of $400 for himself and $150 for the paralegal

time.  (Id. ¶¶ 4, 7; ECF No. 62 ¶¶ 4, 8).[4]  Aronauer is a 2005 graduate of Suffolk Law School and

has primarily focused on employment law since opening his own practice in 2013.  (ECF No. 61

¶ 3).  Other courts in this District and the Eastern District of New York have recently approved an

hourly rate of $400 for Aronauer in FLSA actions (ECF No. 62 ¶ 6), and an hourly rate of $400 is

squarely within the range other courts in this District have awarded experience wage-and-hour

counsel such as Aronauer.  See Surdu, 2018 WL 1474379, at *10; Pastor, 2017 WL 5625556, at

*7.  In addition, this case proceeded through trial, rather than a default judgment, and therefore

involved additional effort and expertise of counsel.  Accordingly, the Court finds that the

requested hourly rate of $400 for Aronauer is reasonable.

Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District.

See Williams v. Metro-North R.R. Co., No. 17 Civ. 3847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y.

June 28, 2018); Tatum v. City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at

*5 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals).  Accordingly,

the Court applies an hourly rate of $125 to the paralegal time in this action.

## ii. **Hours expended**

Perez has provided the Court with contemporaneous billing records of his counsel,

including hours expended, dates of work, and brief descriptions of the tasks performed.  (ECF

Nos. 61 at 4–7; 62 at 5–8).  These billing records reflect reasonable tasks that appear to have

been performed within a reasonable amount of time.  In addition, the Court notes that Aronauer

delegated many tasks to paralegals, which is a mark of efficiency.  (See ECF No. 61 at 4–7).

---

[4] The Court granted Aronauer's request to submit "an amended declaration that includes matters where my hourly rate of $400 an hour was approved."  (ECF Nos. 62, 63).

Therefore, the Court does not find a further reduction to the hours expended is necessary.  See Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *6 (S.D.N.Y. Jan 7, 2004) (approving amount of hours requested as reasonable).

Applying the reasonable rates set forth above, the Court awards Perez attorneys' fees in the total amount of $15,138.75, calculated as follows:

| Timekeeper | Requested Rate | Approved Rate | Requested Hours | Approved Total |
|---|---|---|---|---|
| Aronauer, J. | $400 | $400 | 31.1 | $12,440.00 |
| Paralegals | $150 | $125 | 21.59 | $2,698.75 |
|  |  |  |  | **$15,138.75** |

### iii.    Costs

An employee who prevails in a wage-and-hour action is entitled to recover costs.  See NYLL § 663(1).  Recoverable costs are "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  Perez Garcia v. Hirakegoma Inc., No. 17 Civ. 7608 (SLC), 2020 WL 1130765, at *13 (S.D.N.Y. Mar. 9, 2020) (quoting Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted)).  Perez seeks reimbursement for the costs of deposition and trial transcripts ($730.14), service on Defendants ($105.00), translator services at trial ($450.00), and the court filing fee ($400.00).  (ECF No. 61 at 6).  The Court finds that, each of these categories of costs are reasonable.  See Perez Garcia, 2020 WL 1130765, at *13 (awarding costs for, inter alia, filing fee); Cao v. Miyama, Inc., No. 15 Civ. 0266 (JS) (ARL), 2020 WL 4808624, at *3 (E.D.N.Y. Aug. 18, 2020) (awarding costs for filing, service, and transcription costs); Lopez, 2020 WL 915821, at *14 (awarding costs for filing and service fees);

Zochimitl, 2016 WL 4704917, at *22 (awarding costs in the amount of filing and certain service fees). Accordingly, the Court awards Perez $1,685.14 in reimbursement for his reasonable costs.

## VI. **CONCLUSION**

For the reasons set forth above, the Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and against Defendant as described below and to close this case. The Court finds that Defendants did not violate the FLSA and NYLL with respect to Perez's wages, but did violate the WTPA provisions, for which Perez is entitled to damages in the amount of $1,500.00. In addition, Perez is entitled to attorneys' fees in the amount of $15,138.75, and costs in the amount of $1,685.14.

Dated:     New York, New York
           March 30, 2021

                                    SO ORDERED

                                    _____
                                    SARAH L. CAVE
                                    United States Magistrate Judge